UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF INDIANA

FILED
DEC 11 2019
U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

| | |
|---|---|
| MIRACLE HURSTON, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. |
| INDIANA GAMING COMPANY LLC dba | ) 1:19-CV-4890 TWP-DLP |
| HOLLYWOOD CASINO, DOES I through | ) |
| X Inclusive and ROE Business Entities I | ) |
| through X Inclusive, | ) |
| Defendant. | ) **JURY TRIAL DEMAND** |

**Complaint**

Jurisdiction

1. This is a suit concerning a federal question. Plaintiff is seeking damages in excess of $75,000, a substantial part of this claim arose within this district, and there exists diversity of citizenship. This Honorable Court has jurisdiction over this matter.

## Parties

2. Plaintiff, Miracle Hurston is an individual residing at 1812 Grand Avenue, Middletown, Ohio in Butler County. Plaintiff has resided there post and predating this complaint. And can be served with summons and other processes of this Honorable Court at this address.

3. Defendant, Indiana Gaming Company LLC dba Hollywood Casino which is located at 777 Hollywood Blvd, Lawrenceburg, Indiana in Deer County, is a domestic limited liability company whose principal office address is 825 Berkshire Blvd, Wyomissing, Pennsylvania in Berks County.

## Facts

4. Plaintiff is considered a high-stake player at Hollywood Casino located at 777 Hollywood Blvd, Lawrenceburg, Indiana.

5. Defendant owns Indiana Gaming Company LLC dba Hollywood Casino located at 777 Hollywood Blvd, Lawrenceburg, Indiana.

6. April 7th 2018 Plaintiff was removed from casino by casino manager Jerry Doe. A Caucasian man forced Plaintiff out of playing spots (seats at table). Plaintiff was playing two spots and by rule the casino holds black jack positions for at least 15mins sometimes 20min to use restroom, get money, etc... Caucasian man asked Plaintiff if he could have one of his spots, Plaintiff said no I'm getting ready to take a break. Caucasian man told Plaintiff he didn't own the table and forcefully took spots. The Caucasian man called Plaintiff a punk and the dealer proceeded to deal Caucasian man a hand. Plaintiff requested a manager and security. Casino

manager Jerry arrived immediately told Plaintiff to leave even after hearing explanation from witnesses about the situation. Plaintiff told Jerry Casino Manager it was racial discrimination, Casino Manager Jerry stated if Plaintiff was being treated so bad and was being discriminated against Plaintiff needed to quit coming. No action at all was taken against the white man. Security or management didn't say a word to Caucasian man witnesses will attest to this at trial. Plaintiff contacted host, and made note of situation.

7. May 23rd 2018 Plaintiff noticed that play rating had been compromised. Plaintiff began getting harassed by Michelle Doe supervisor every chance she got began to antagonize. Michelle is a Caucasian.

8. July 7th 2018 as a result of Plaintiffs compromised rating status goal was missed. Plaintiff contacted host Nolan Master's about a multiplier that he didn't receive. Plaintiff then contacted casino host manager Brandon Raymer and asked him about this and could anything be done to help him. He said nothing could be done. Plaintiff was informed that a Caucasian woman in the same situation, by the name of Linda Bowling was offered a program which moved her up to her Icon Status. Plaintiff called GM Brad Hirsch who said marketing would be reaching out to him and he didn't know why Plaintiff wasn't offered the program, but to expect to hear from marketing. Brandon contacted Plaintiff later that day and offered Plaintiff the program.

9. July 28th 2018 supervisor Michelle Doe noticed Plaintiff playing at a Black Jack table came over and stood right in front of Plaintiff began starring, brought out a piece of paper and pencil and began to write. Another supervisor Tony Doe came to take her place and she points

at Plaintiff and says this is his average.  Plaintiff and Tony are conversing about Michelle's actions, Plaintiff states only an idiot would do what she just did, especially after management had assured Plaintiff that nothing like that would happen again after the May23rd report. Michelle then approaches Plaintiff and says are you calling me an idiot? Plaintiff responded with only an idiot would do what you just did especially after being instructed not to do it by management.  Michelle said she doesn't care what management said, and no one was going to do anything about whatever she did to Plaintiff, he was nobody. She called casino manager Chris to the table, Plaintiff explained what occurred He then took a few minutes to talk to Tony and Michelle and then told Plaintiff he had to leave for the night for calling her an idiot. Again, Plaintiff reported the situation to host Nolan Master's.

10.     December 8th 2018 Transition of a new GM was taking place.  Brad Hirsh was relocating to a new property and new named GM Rod Casion would be taking over Hollywood Casino Lawrenceburg. Plaintiff was playing at Black Jack table asked a cocktail waitress by the name of Brook Doe for a drink.  Plaintiff purchased a drink from her and tipped her $10 for a $3 drink. The dealer Chris Doe (Later arrested for cheating and Plaintiff had complained that the specific dealer cheated him to management) said something and the table began laughing.  Brook immediately came to Plaintiff aggressively, and became confrontational, and eventually called Plaintiff a bitch.  Plaintiff didn't raise voice, get out of my chair, make a threat, or do anything that would pose a threat or disturbance. Casino manager Jerry and supervisor Kevin showed up. Jerry Casino Manager from April 7th 2018 dispute had Plaintiff removed. Plaintiff reported the incident three days later he observed Brook back at work.  Plaintiff communicated with Brook for weeks after that as she didn't even realize that Plaintiff was the guy who she called a bitch.

When Plaintiff revealed this to her, she began to cry and apologize and said she was going through something with her boyfriend which is why she did what she did. Plaintiff has witness and statements to prove this at trial.

11. February 9th, 2019 Plaintiff is playing on a slot machine for hours. A Caucasian couple comes and plays the machine beside Plaintiff. There had been multiple people playing beside Plaintiff during that time period all of which were smokers. All previous players of different race laughed and joked with Plaintiff without incident. The Caucasian woman part of the last couple to arrive playing the machine next to Plaintiff blew smoke in his face. The Caucasian woman began holding her cigarette in Plaintiffs face seemingly intentional. Plaintiff asked her politely if she wouldn't blow smoke or hold her cigarette in his face. She responds with Mutha Fucker if you don't want smoke in your face go to a nonsmoking casino. Plaintiff responded with mam I was very polite to you, don't call me out of my name and I have the right to ask you not to blow smoke in my face. The Caucasian woman got up and lunged toward Plaintiff and his friend. Plaintiff stood up as the man with her then also lunged forward at Plaintiff and told him to get the fuck out. Eventually security shows up and doesn't ask one question. Immediately security came to Plaintiff without any investigation and asked Plaintiff to leave. Multiple guest viewed this black and white alike and voiced outrage for Plaintiffs treatment. After outrage from guest who observed the situation security eventually tracked the Caucasian woman down and put her out. Plaintiff later attempted to contact the head of security which eventually lead to a phone call issuing a ban from the property of Plaintiff. Later that suspension was shortened.

12.     April 4th 2019 Plaintiff noticed again rating was incorrect. Plaintiff played for 4hrs at $50/hand and only earned $1.15 in comp dollars. Plaintiff brought this to the attention of host, Cody Tuner, manager of host Brandon Raymer, and VP of operations Ryan Hinthorne. All said they'd look into it.

13.     May 18th 2019 Plaintiff went to withdraw $500 from the ATM. The transaction was completed, funds were taken from Plaintiff's account but the machine didn't disperse the cash. Plaintiff went to the cage, and surveillance verified Plaintiff's claims. Cage supervision gave Plaintiff a card and told him the ATMs weren't their responsibility. Plaintiff stated the situation was some bullshit and requested to speak with a casino manager, host, or security. Not one member of security, management, or anyone had time to come talk to Plaintiff. On the way exiting the casino with his friend Plaintiff crosses paths with casino host Barb Doe. Plaintiff explains to her what happens, she makes a call to her boss Brandon Raymer and he tells her to give Plaintiff $150 in slot play. She begins the conversation with saying Miracle this is some bullshit he wants me to offer you $150 in slot play and states she personally has seen him do more for others. Plaintiff respond back with yes; it's insulting and Brandon could shove the slot play up his ass. Plaintiff thanked her for all her efforts. The discussion happened in a private quiet fashion away from guest between Plaintiff and his guest. Barb made it clear she was aware that Plaintiff's hotel and dinner reservations hadn't been done properly that weekend and this was just one more slap in the face. Plaintiff received a call from Casino VP Ryan Coppda originally saying he cussed out cage supervisor Lee and his actions were unacceptable and he was to be banned from the property. Rod Casion GM who latter shed light on what happened, stated he wasn't aware that it was a serious issue because he spoke with Plaintiff

later the day after it happened.  There were no statements of Plaintiff cussing out anyone, and there was also no security intervention of any sort.  In fact, Rod stated he was aware that no one with any true authority would speak with Plaintiff.  He later stated that somehow 20 different random guests' statements were produced saying that Plaintiff told Barb to shove slot play up her ass and Fuck Hollywood etc.  Plaintiff called Barb the day he was made aware of the ban and Barb said she had no ideal what was going on, she talked briefly and quickly because someone was walking in the office.  Barb stated she couldn't comprehend Plaintiff getting banned; however, she could get in trouble for talking to him.

14. June 1st 2019, after this situation Plaintiff and GM Rod Casion had a lengthy discussion. Rod told Plaintiff to reach out to no one but him and he was going to make things whole.  He admitted to all the things that Plaintiff had concerns about, and said that Plaintiff would be made whole. Plaintiff and Rod GM entered an agreement to have exclusive communication when issues occurred. Rod made it clear that Plaintiff and him was to iron out and future issues.

15. June 8th 2019 Plaintiff and his friend was playing Black Jack at a table for about 3 hours. Several individuals had come and gone from the table. There were two Caucasian man who sat down at the table and both were rude. The first Caucasian man asked for a $500-dollar marker seen that the Plaintiff was playing two hands and asked the question of why would Plaintiff want to do that, and he deserved to play two hands more so than Plaintiff.  The Caucasian man went as far as requesting that Plaintiff give him one of his hands to the Casino manager Tamara. Tamara Casino manager told the Caucasian man no, but told Plaintiff to make sure to play both hands or the Caucasian man could have one.  The Caucasian man started being offensive. Plaintiff along with two additional players at the table exited the game.  Eventual he left and

Plaintiff and the other guest joined the game again. Things started going well and another Caucasian man came to the table. He was angry and his demeanor was extremely aggressive. Plaintiff's friend asked him if he would wait one hand before joining because the table was hot. The Caucasian man said no. Plaintiff's friend said to Caucasian man that he must not be a real black jack player. He responded with, "why, because I'm not black". Of course, this was offensive. The dealer along with Plaintiff cringed and made the casino manager Tamara aware of the offensive comments and that the behavior of the Caucasian man was offensive and disrupted. It was also made aware that he was holding a spot at another table, which had been communicated to not be allowed. No action was taken by Casino Manager Tamara not even a verbal reprimand asking the Caucasian man to be respectful. All guest including plaintiff sits out of the game and the Caucasian man eventually lost all his money. The Caucasian man follows Plaintiff back to the hotel. Before getting on elevator Caucasian man looks at Plaintiff and says I'm not getting on no elevator with no broke "nigger". Plaintiff became understandably agitated dared the Caucasian man to say it again, others heard the commotion in the Hotel lobby and security came. Upon talking to security, security commended Plaintiff for not letting the situation get out of hand, and took a statement from Plaintiff's friend. Plaintiff didn't write a statement because of the agreement he and GM Rod Casion had entered, but he contacted Rod immediately about the situation.

16. Thursday, June 13th 2019 Plaintiff texted host Cody Turner to reserve a room. Cody told Plaintiff that he couldn't book my room at that time because they were investigating the June 8th 2019 situation. Cody said to Plaintiff he wasn't banned or anything they just wanted to straighten things out before they reserve Plaintiff's room. Plaintiff asked Cody, why would they

inconvenience him in any way due to the ignorance and actions of another? He didn't respond, and Plaintiff heard nothing back from management, security, etc...

17. Friday, June 14th 2019 Plaintiff and his friend plan to go to Hollywood casino. Plaintiff sends text to Rod (GM) stating that he'd like to talk to him in person on our way to the casino. Plaintiff got no response from Rod. Upon entering the casino, Player development manager Brandon Raymer approaches Plaintiff and asked if anyone had contacted then and Plaintiff said no. Brandon Raymer said unfortunately you have been suspended from the property; He stated he didn't know why as he just found out yesterday himself. He said whatever happened on June 8th was the reason. I tried to get some sort of explanation, but no one provided me with one. Rod was unavailable; he wouldn't answer any calls and Brandon said a letter would be sent to plaintiff. Brandon got security director Eric on the phone and Eric told Plaintiff over the phone while standing in the lobby that Plaintiff was suspended for a year. Plaintiff asked to speak with Rod and was it approved. Eric said the decision was made and there's nothing else to talk about. Plaintiff and guest vacated the premises.

18. June 21st 2019, after multiple attempts to get a response from the GM(Rod) Plaintiff called to try and get more detail about the ban. Tristica Howard the compliance manager whom the letter in regards to the ban was signed by was whom Plaintiff spoke with. She was not able to provide Plaintiff with any additional information. The only thing she said was the ban was for what took place June 8th 2019 between Plaintiff and the Caucasian male guest. Plaintiff told her that his behavior was not the reason for the action taken and that he clearly felt that race and gender both contributed to what occurred. Plaintiff told her that my behavior was definitely not disruptive nor was it cause to discontinue a business relationship. She

responded with it's only a year and you don't have to write a letter of reinstatement or anything of the sort. You can just show up.

## Claim

**A.   Race Discrimination**

1. Indiana Law IC 22-9-1 States that it is against the law for an individual to be denied access or to receive poor service or lesser quality accommodations because of his or her race, color, national origin, ancestry, religion, sex, and disability.

2. Defendants behavior between April 7th 2018- June 21st 2019 are clear acts of race discrimination and will be proven at trial.

3. As a result, Plaintiff lost $125,000 worth of already earned commodities such as rooms, dinning, and trips. Plaintiff lost opportunity recoup any high stakes lost.


**B.   Breach of Contract**

1. On June 1st 2018 Plaintiff and Defendant entered a contract for exclusive communication.

2. Defendant Breached that duty June 21st 2019, by failing to communicate with Plaintiff directly when determining a resolution of a conflict, regardless of rather Plaintiff would be satisfied with determination.

3. As a result, Plaintiff lost $125,000 worth of already earned commodities such as rooms, dinning, and trips.  Plaintiff lost opportunity recoup any high stakes lost.

**C.     Harassment**

1. IC 35-45-10-C Repeated impermissible contact that would cause a reasonable person to suffer emotional distress.

2. Defendants behavior between April 7th 2018-June 21st 2019 are clear acts of harassment and will be proven at trial.

3. As a result, Plaintiff lost $125,000 worth of already earned commodities such as rooms, dinning, and trips.  Plaintiff lost opportunity recoup any high stakes lost.

**D.     Retaliation**

1. Defendant Retaliated against Plaintiff for complaining about unequal treatment amongst minorities between April 7th 2018-June 21st 2019 and will be proven at trial.

3. As a result, Plaintiff lost $125,000 worth of already earned commodities such as rooms, dinning, and trips.  Plaintiff lost opportunity recoup any high stakes lost.

**E.     Conspiracy**

1.  Defendant Conspired to force Plaintiff to forfeit rewards already earned in conjunction with proceeding acts from April 7th 2018-June 21st 2019 and will be proven at trial.

3.  As a result, Plaintiff lost $125,000 worth of already earned commodities such as rooms, dinning, and trips. Plaintiff lost opportunity recoup any high stakes lost.

**F.      Negligence**

1.  Defendant failed to act on claims of discrimination and harassment. Defendant was made aware by Plaintiff of discriminatory behavior on several occasions and Defendant failed its duty to provide a public accommodation free of discrimination.

2.  These things occurred between April 7th 2019-June 21st 2019 and will be proven at trial.

3.  As a result, Plaintiff lost $125,000 worth of already earned commodities such as rooms, dinning, and trips. Plaintiff lost opportunity recoup any high stakes lost.

<u>Prayer for Relief</u>

WHEREFORE, Plaintiff prays for the following relief:  A.) Compensatory Damages for lost of rewards already earned in excess of $125,000.  B.) For general damages of mental distress and other damages in excess of 125,000.  C.) Court and Filing Fees.  D.) For interest at the statutory rate and for such other and just relief that this Honorable Court sees just and equitable.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___11th___ day of ___December___, __2019__
              (Day)                      (Month)      (Year)

_____
(Signature of Plaintiff)

Case 1:19-cv-04890-TWP-TAB   Document 1   Filed 12/11/19   Page 13 of 13 PageID #: 13