# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

MIRACLE HURSTON,            )
                                        )
            Plaintiff,       )
                                          )
            v.                    )     Case No. 1:19-cv-04890-TWP-DLP
                                          )
DOES I THORUGH X INCLUSIVE, ROE )
BUSINESS ENTITLES I THROUGH X    )
INCLUSIVE, and PENN NATIONAL      )
GAMING, INC. d/b/a HOLLYWOOD CASINO, )
                                          )
            Defendants.    )

## ENTRY ON DEFENDANTS' MOTION TO DISMISS
## AND OTHER PENDING MOTIONS

This matter is before the Court on Defendant Penn National Gaming, Inc. d/b/a Hollywood Casino's ("Hollywood Casino") Motion to Dismiss Plaintiff's Second Amended Complaint, (Dkt. 20), for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Miracle Hurston ("Hurston"), is proceeding *pro se*. On April 17, 2020, Hurston filed a Second Amended Complaint, (Dkt. 17), which is the subject of Hollywood Casino's Motion to Dismiss. The Second Amended Complaint alleges race discrimination in violation of Title II of the Civil Rights Act and 42 U.S.C. § 1981, and state law claims for false imprisonment, intentional infliction of emotional distress, breach of contract, and negligence on the part of Hollywood Casino. Hurston then filed a document titled second Motion to Amend Complaint, (Dkt. 27), and Hollywood Casino filed a Motion to Stay Proceedings, (Dkt. 29). On July 28, 2020, Hurston filed a third Motion for Leave to Amend Complaint, (Dkt. 37). Thereafter, the Court granted Hollywood Casino's renewed Motion to Stay Proceedings related to discovery, so that the Court would first have an opportunity to rule on the pending ripe motions and thus

reduce the burden of litigation on the parties. (Dkt. 45.) Hurston has filed an Objection to Order Granting Defense's Motion to Stay, (Dkt. 46), which the Court construes as a motion for reconsideration. For the reasons stated below, the Court grants Hurston's second Motion to Amend Complaint, (Dkt. 27), and **consolidates** the second Amended Complaint attached at Dkt. 27-1 with the Second Amended Complaint at Dkt. 17. The Court **denies** Hurston's third Motion for Leave to Amend Complain, (Dkt. 37), and **grants in part and denies in part** Hollywood Casino's Motion to Dismiss Plaintiff's Second Amended Complaint, (Dkt. 20). The Court also **denies as moot**, Hurston's motion for reconsideration of the stay at Dkt. 46.

## I.   BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Second Amended Complaint and construes all inferences in favor of Hurston, as the non-moving. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Hurston is an African-American male. Between 2017 and 2019, he was a frequent patron of Hollywood Casino located in Lawrenceburg, Indiana. (Dkt. 25 at 1.) He participated in various gambling activities at the casino, and had earned $125,000.00 worth of casino commodities throughout the significant time that he spent gambling at the casino. *Id*. at 2. Hurston was considered a high stake player. (Dkt. 17 at 3.)

On April 7, 2018, Hurston was removed from Hollywood Casino by casino manager, Jerry Doe ("Jerry"), due to an altercation with another customer. A Caucasian man "forced" Hurston out of a seat at a table in violation of casino rules. The dealer then proceeded to deal this man a hand, so Hurston requested a manager and security. Jerry arrived and "immediately told [Hurston] to leave even after hearing explanation [sic] from [Hurston] and witnesses about the situation."

(Dkt. 17 at 3.)  Hurston complained to Jerry that this was racial discrimination, and Jerry replied "if [Hurston] was being treated so bad and was being discriminated against [Hurston] needed to quit coming." *Id*. No action was taken against the Caucasian man. Hurston reported this situation.

On May 23, 2018, Hurston noticed that his "play rating had been compromised." *Id*. at 4. He began being harassed by Michelle Doe ("Michelle"), a Caucasian female and the table games supervisor, and at "every opportunity available she began to antagonize and harass" him. *Id*. Hurston reported this situation.

On July 7, 2018, as a result of Hurston's compromised player rating status a "goal was missed." *Id*. He contacted casino host manager Brandon Raymer ("Raymer"), and asked if there was anything he could do to help him. Raymer said there was not. Hurston was informed that a Caucasian woman by the name of Linda Bowling was in a similar situation and was offered a program which moved her up to Icon status, which would have been Hurston's appropriate status if not for the compromise. Hurston was not offered the program until after contacting then General Manager Brad Hirsch and making him aware of the situation.

On July 28, 2018, Hurston was instructed to leave the casino by Jerry for calling Michelle an "idiot". Michelle had been "starring flamboyantly" at Hurston, writing on a piece of paper, and attempting to limit his average bet at the table, thus making it so Hurston could not be ranked any higher. Hurston admits to saying, "only an idiot would do what she just did". Casino manager Chris Doe came to the table and told Hurston to leave for the night. Hurston again reported this situation. *Id*. at 4-5.

On December 8, 2018, Hurston was once again removed from the casino when an incident involving a cocktail waitress occurred. Hurston had purchased a drink from the waitress and tipped her generously. Hurston asserts that a dealer at the table he was sitting at made a joke at which

the table laughed, causing the waitress to become confrontational and called Hurston a "bitch." Hurston "didn't raise voice, get out of his chair, make a threat, or do anything that would pose a threat or disturbance during the entirety of the situation." Jerry came to the table and had Hurston removed. The waitress received a 3-day suspension for the incident. *Id.* at 5.

On February 9, 2019, Hurston got into an altercation with a Caucasian couple at a slot machine in the casino. He asked the woman to "not blow smoke in [his] face," to which the woman began swearing at him. The man also swore and "lunged" at Hurston. A security supervisor came and, without investigation into the situation, demanded Hurston leave. The Caucasian couple walked away and continued playing slot machines. *Id.* at 6. After outrage and demand from other guests at the handling of the situation, the Caucasian woman was also forced to leave. *Id.* at 6-7. Hurston reported this situation to host Cody Turner ("Turner"). Later, while following up with the situation, Hurston was told there "were no notes about the situation, and that security basically acted as if it didn't happen." *Id.* at 7. When Hurston "demanded answers" for his discriminatory treatment and insisted Turner push the issue, Hurston was informed by the security supervisor he was banned from the casino property for 30 days. This suspension was later shortened after Hurston met with the General Manager, Rod Cacion ("Casion"). *Id.*

On May 18, 2019, Hurston withdrew $500.00 in cash from the casino ATM, but the machine did not disperse any cash. When Hurston went to the teller's cage, surveillance verified his claim, but the cage supervisors stated the ATMs were not their responsibility. Hurston was denied the opportunity to speak to anyone with authority. Upon exiting the casino, Hurston crossed paths with casino host Barb Doe ("Barb"). Barb attempted to speak with her boss, Raymer, about the situation, however, Raymer only offered to give Hurston $150.00 in slot play, which Barb

disapproved of stating that "she personally has seen him do more for others." Hurston told Barb that "Brandon can take the free play and shove it up his ass." *Id.* at 7-8.

May 25, 2019, Hurston received a call from casino vice president of operations Ryan Coppda, who made accusations that Hurston cursed out the cage supervisor. He told Hurston he was banned from the property and it was his discretion as to how long Hurston would be banned. *Id.* at 8.

Hurston spoke with Casion on May 26, 2019, who stated he had not been made aware of any behavior issues in regard to Hurston. On June 1, 2019, Hurston and Casion spoke again. Hurston contends he and Casion "entered an agreement to have exclusive communications when issues occurred", and that Hurston "would be made whole." The agreement included that Hurston and Casion were "to iron out any future issues exclusively." *Id.* at 8, 9.

On June 8, 2019, Hurston was playing Blackjack with a friend when a Caucasian man came to their table. He was "angry and his demeanor was extremely aggressive." After being asked to wait a hand because the table was hot, the man said no. Hurston's friend told him "he must not be a real blackjack player" to which the man responded with, "why, because I'm not black". *Id.* at 10. Later, as Hurston made his way back to the hotel, the man followed. Before entering the elevator, the man looked at Hurston and said, "I'm not getting on no elevator with no broke n*****." *Id.* Hurston became agitated and "dared the Caucasian man to say it again." *Id.* Security came, and upon speaking with Hurston, commended him for not letting the situation get out of hand. Because of the agreement he and Casion had entered he did not write a statement, but Hurston contacted Casion right away. Casion informed Hurston he was out of town and would investigate it upon his return. *Id.* at 10-11.

On June 13, 2019, Hurston sent a text message to Turner to reserve a room. Turner responded telling Hurston he could not book him a room at that time because they were investigating the June 8, 2019 situation. Turner informed Hurston he was not banned, they "just wanted to straighten things out before they reserve a room" for him. The following day, June 14, 2019, Hurston and a friend went to the casino. Hurston attempted to reach Casion via text but was unsuccessful. Upon entering the casino, Raymer approached Hurston and asked if anyone had spoken with him. When Hurston responded in the negative, Raymer informed Hurston that he had been suspended from the property. Raymer stated he did not know what it was in regard to, as he had just found out about the suspension the previous day, but stated it had to do with "whatever occurred on June 8th." *Id.* at 11. Hurston asked to speak with Casion, but Raymer informed him Casion was unavailable. He attempted to reach Casion again, but Casion did not answer any of Hurston's calls. A security director named Eric was called to see if he had additional information, and Eric informed Hurston that he had been suspended from the casino for a year. Hurston asked if the suspension had been approved by Casion, to which Eric replied there was nothing else to talk about and then hung up. *Id*.

On June 21, 2019, Hurston spoke with Tristica Howard, the compliance manager who had signed the official letter banning Hurston from the casino, and she informed him the ban was for what took place on June 8, 2019. Hurston told her his behavior was not the reason for the action taken and he clearly felt race and gender both contributed to what occurred. He informed her his behavior was not disruptive nor was it cause to discontinue their business relationship. She replied, "it's only a year . . . ." *Id*. at 12. Shortly thereafter, Hurston initiated this action.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of any portion of a complaint for failure to state a claim upon which relief can be granted. *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) will be invoked to dismiss a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

"In practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (internal citations and quotations omitted). The complaint must include enough facts to state a claim to relief that is plausible on its face. *Data Research & Handling Inc. v. Vongphachanh*, 279 F. Supp. 3d 1066, 1070 (N.D. Ind. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A motion under Rule 12(b)(6) challenges the sufficiency of the complaint and not the merits of the suit. *Id.* Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555.

A plaintiff can plead himself out of court by pleading facts that show that he has no legal claim. *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007). Dismissal is appropriate when a party has included in its complaint facts that establish an impenetrable defense to its claims. *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and quotation marks omitted).

> However, it is also well established that pro se litigants are not excused from compliance with procedural rules. The Supreme Court has never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel. Further, as the Supreme Court has noted, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Feresu v. Trs. of Ind. Univ.*, 2017 U.S. Dist. LEXIS 66452, at *18–19 (S.D. Ind. May 2, 2017)

## III.   DISCUSSION

Before beginning its analysis of the pending motion to dismiss, the Court will first address the procedural posture of this case. Hurston filed the original Complaint on December 11, 2019, (Dkt. 1). He filed a First Amended Complaint on January 21, 2020, (Dkt. 5). On April 24, 2020, the Court issued a Scheduling Order, (Dkt. 19), which specifically stated that any party who wants to amend its Complaint, Answer, or other pleading must file the amended pleading by the deadline of June 29, 2020 deadline. *Id*. at 2. The Scheduling Order also states if "Plaintiff seeks to amend his or her Complaint", he "must explain how the Amended Complaint differs from the most recently filed Complaint and explain why it was not amended within the above deadline". *Id.* at 3. On April 17, 2020, Hurston filed a Motion to Amend Complaint and Amended Complaint, (Dkt. 17), which is the subject of Hollywood Casino's Motion to Dismiss. As noted earlier, the

Amended Complaint alleges race discrimination in violation of Title II of the Civil Rights Act and 42 U.S.C. § 1981, and state law claims of false imprisonment, intentional infliction of emotional distress, breach of contract, and negligence on the part of Hollywood Casino.

On May 21, 2020, Hurston filed a document titled Motion to Amend Complaint, Memorandum in Support.  (Dkt. 27.)  In this filing Hurston states:

> Plaintiff wishes to remove the harassment, retaliation, and Conspiracy [sic] causes of action.  Plaintiff wishes to add 42 U.S.C 1981 cause of action to the complaint. Plaintiff wishes to file this motion to correct the technical[ly] deficient motion he filed on April 17th, 2020 with the court.  His pages got truncated through the filing and the header pages was [sic] lost.  This action will not prejudice the defense in any way, as the new complaint will be the same as complaint filed April 17th, 2020 excluding the failure to separate Motion to Amend and Amended Complaint.

*Id*. at 2.  Attached to the motion is a document titled Amended Complaint.  (Dkt. 27-1.)  In its Entry dated June 5, 2020, the Court determined that the "Amended Complaint contained in Dkt. 17 is now the operative Complaint in this action."  (Dkt. 30 at 2.)  Because the Second Amended Complaint at Dkt. 27-1 is the same as the one at Dkt. 17, and the only change is that Hurston removes the harassment, retaliation, and Conspiracy claims, the Court confirms that it will allow removal of those claims and consider the Amended Complaint at Dkt. 17 when ruling in this Entry.

The Court will first address Hurston's request to file a third amended complaint, before turning to the Motion to Dismiss.

### A.   <u>Hurston's Motion for Leave to file Amended Complaint</u>

On July 28, 2020, Hurston filed a Motion for Leave to Amend Complaint, (Dkt. 37), and attached a document titled Third Amended Complaint, (Dkt. 37-1)[1]. Regarding the proposed Third Amended Complaint, Hurston states "all facts remain the same with additional claims of: 1. Breach of the Implied Covenant of Good Faith and Fair Dealing; and 2. Promissory Estoppel".  (Dkt. 38

---

[1] This filing is actually the forth proposed amended complaint and fifth proposed complaint filed by Hurston. (*See* Dkt. 1, Dkt. 5, Dkt. 17, Dkt. 27 and Dkt. 37).

at 3.)  In his Motion, he argues only that he is entitled as a matter of right to again amend his complaint and asserts "Defendants will not suffer any undue prejudice by virtue of the Court's allowance of the proposed amendment." *Id.*

Hollywood Casino opposes the Motion for several reasons. First, it notes that Huston has disregarded the Court's Scheduling Order, which required the filing of amended complaints by June 29, 2020.  It argues that Hurston is well-aware of the process for filing amended pleadings, as demonstrated by the multiple amended pleadings and motions to amend his pleadings he has filed since January 2020. Second, Hollywood Casino argues it would be prejudiced by the filing of a third amended complaint, because it has already spent the time and resources to prepare and file two separate Motions to Dismiss with supporting Memoranda of Law, to address Hurston's first and second Amended Complaints.  (*See* Dkt. 14, Dkt. 15, Dkt. 20 and Dkt. 21.)  Next, they point out that although the third proposed amended complaint includes additional legal allegations and seeks new/additional prayers for relief, Hurston does not discuss these changes and additions or give an explanation as to why the proposed third amended complaint was not filed by the deadline.  In addition, Hollywood Casino contends there is no good cause for Hurston's belated filing.

In his reply, Hurston explains that "through due diligence plaintiff continued to work on his case, studying, gathering evidence, interviewing witnesses, essentially preparing for trial. On July 28th 2020, [sic] 29[ ] days after the deadline to file an amended complaint. Through due diligence Pro Se Plaintiff became aware of legal causes of action that should had [sic] been addressed in his complaint."  (Dkt. 47 at 4.)

The right to amend a complaint is not absolute. *Brunt v. Serv. Employees Int'l Union,* 284 F.3d 715, 720 (7th Cir .2002), and can be denied for undue delay, bad faith, dilatory motive,

prejudice, or futility. *Ind. Funeral Dir. Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003). The Motion to Dismiss presently before the Court has been fully briefed by all parties; Hurston filed a response on May 21, 2020 (Dkt. 25) and Hollywood Casino filed a reply on May 27, 2020. (Dkt. 28.) Granting leave to file what is titled a third amended complaint past the June 29, 2020 deadline would unnecessarily delay these proceedings. Neither the Motion nor the Memorandum in Support (Dkt. 38) show good cause for altering the Court's Scheduling Order to allow Hurston to file a third amended complaint past the June 29, 2020 deadline. Hurston has offered no explanation of why his proposed claims of Breach of the Implied Covenant of Good Faith and Fair Dealing, and Promissory Estoppel with due diligence, could not have been pled in the earlier complaints.

The good cause standard focuses on the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992). Because Hurston has not demonstrated good cause to show that despite his diligence, the June 29, 2020 timetable could not reasonably have been met, and because Hollywood Casino would be prejudiced by the belated filing, Hurston's Motion for leave to a third amended complaint, (Dkt. 37), is **denied**.

As noted earlier, Hurston abandoned his claims for the harassment, retaliation, and conspiracy causes of action in Docket 27; therefore, the claims analyzed in this Entry are that Hollywood Casino violated Title II of the Civil Rights Act (42 U.S.C. § 2000a) and 42 U.S.C. 1981, as well as state law claims of false imprisonment, intentional infliction of emotional distress, breach of contract, and negligence.

## B.    Race Discrimination Under 42 U.S.C. § 2000(a)

42 U.S.C. § 2000(a) states that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any

place of public accommodation, without discrimination or segregation on the ground of race, color, religion, or national origin."  A suit brought under the "Public Accommodations" part of the Civil Rights Act of 1964 (42 USC 2000a) is private in form only. This mean a plaintiff cannot recover damage for himself, he may obtain an injunction, but he does so not for himself alone, "but as a private attorney general." *Newman v. Piggie Park Enterprises, Inc*. 395 U.S. 400, 401-402 (1968).

At the motion to dismiss stage, a plaintiff must set out factual allegations to show that he (1) is a member of a protected class; (2) was not allowed to enjoy a place of public accommodation; and (3) others outside the protected class were allowed to enjoy that place. *Hornick v. Noyes,* 708 F.2d 321, 325 n. 8 (7th Cir. 1983)*; Carney v. Caesar's Riverboat Casino, LLC,* 2009 WL 363623 (S.D. Ind. 2009).

Hurston alleges the following incidents were in violation of 42 U.S.C. § 2000(a):  (1) the April 7, 2018 incident where he was removed from the casino for reporting threatening and offensive action taken against him by a Caucasian man, and no action being taken against the Caucasian man; (2) the July 7, 2018 incident where Raymer offered VIP privileges to a Caucasian woman, Linda Bowling, while not offering Hurston the same privileges; (3) the December 8, 2018 incident where Jerry removed Hurston from the casino after Hurston alleges he was verbally attacked by a Caucasian cocktail waitress; (4) the February 9, 2019 incident where security removed Hurston from the casino after he was allegedly threatened, verbally assaulted, and battered by a Caucasian guest while taking no action against the Caucasian guest; (5) the February 15, 2019 incident where security called Hurston and issued a 30 day ban for reporting discriminatory behavior by security staff; (6) the May 18, 2019 incident where Hurston was denied the opportunity to speak with someone with authority; (7) the May 25, 2019 incident where Hurston was banned for expressing his dissatisfaction with the way his ATM issue was resolved;

(8) the June 8, 2019 incident where no action was taken against the Caucasian man who made offensive racial comments to Hurston and his guest; (9) the June 13, 2019 incident where Turner did not book Hurston a room after he reported racial hate language and threatening behavior by a Caucasian guest; (10) the June 14, 2019 incident where Casion and Eric discriminated against Hurston by banning him from the casino, after Hurston reported hate language and threatening behavior by a Caucasian guest; and (11) the June 21, 2019 incident in which Tristica Howard upheld the ban of Hurston from the casino. (*see* Dkt. 17 at 12-14.)

Hollywood Casino does not dispute that Hurston is a member of a protected class, since he is African American.  However, they contend the allegations in the Second Amended Complaint fail to support a claim that Hurston was not allowed to enjoy a place of public accommodation, or that others outside his protected class were allowed to enjoy the premises.  Hollywood Casino argues that Hurston has effectively pled himself out of court, as his allegations show that he "was clearly allowed to enjoy [the casino], a place of public accommodation". (Dkt. 21 at 10).  They note that with the exception of the incident on June 6, 2019, all other occasions on which he was suspended or asked to leave, Hurston was invited back into the casino. Hollywood Casino points out that Hurston was allowed into the casino so often that he was considered a "high stakes player who had earned $125,000.00 worth of commodities from his time spent at the casino." *Id*. at 10. And when he was asked to leave the casino, it was only when he became involved with incidents which disturbed the comfort and safety of patrons and employees. *Id*.

The Court determines that Hurston has sufficiently pled that he was not allowed to enjoy the casino.  He alleges on at least five occasions between April 7, 2018 and June 8, 2019, he was removed or temporarily suspended from the casino property.  While it is true that the Second Amended Complaint shows that Hurston was welcomed back and allowed to enjoy the casino on

numerous occasions, on June 14, 2019, Hurston alleges that ultimately, he was banned from the casino for a year because of the June 8, 2019 incident. This allegation is sufficient to establish that Hurston was not allowed to enjoy the casino.

However, Hurston also has the burden of establishing a *prima facie* case of discrimination by showing that others outside of his protected class of African-American were allowed to enjoy that place. While Hurston has alleged that "no actions" were taken against the Caucasian guests following the many incidents, he makes no allegations that any other person outside his protected race was allowed to enjoy the casino following those incidents. In fact, he alleges that when he was asked to leave following the February 9, 2019 incident, a Caucasian woman was also asked to leave. Regarding the Caucasian man that Hurston argued with on June 8, 2019, the Second Amended Complaint is silent as to whether that Caucasian man was thereafter allowed to enjoy the casino. Accordingly, the Court **dismisses** Hurston's allegations under 42 U.S.C. § 2000(a) for failure to state a claim.

In addition, as relief for his public accommodation claim, Hurston specifically seeks $125,000.00 worth of already earned commodities such as rooms, dining and tips, and compensation for loss of sleep, feelings of racial stigmatization and non-economic damages of $100,000.00. (*See* Dkt. 17-14). While a general request for injunctive relief is made in the conclusion of the Second Amended Complaint, that remedy is not made specific to Hurston's public accommodation claim. As noted above, 42 U.S.C. 2000a only permits the issuance of injunctive relief.

## A.     Violations of 42 U.S.C. § 1981

Section 1981, titled "Equal Rights Under the Law" states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give

> evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). This statute defines "makes and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). "While § 1981 claims are most often brought in connection with the right to contract for employment, plaintiffs can also use the statute to enforce their rights to enter in to retail contracts." *Carney v. Caesar's Riverboat LLC,* 2009 WL 363623, at * 3 (S.D.Ind. Sept. 25, 2009); *see also Williams v. Southern Illinois Riverboat/Casino Cruises*, 2008 WL 1776461 (S.D.Ill. April 16, 2008). "In the context of the denial of the right to make or enforce a retail contract, the appropriate . . . prima facie case is that (1) the plaintiff is of a racial minority, (2) he attempted to make or enforce a contract, (3) the defendant denied him the right to make or enforce the contract[;] and (4) the defendant treated the plaintiff less favorably than other white people who were similarly situated." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1973).

Hurston alleges he was discriminated against in the incidents on April 7, 2018, May 23-July 28, 2018, July 7, 2018, May 25, 2019, June 8, 2019, June 13, 2019 and June 14, 2019. Hurston has pled himself out of court on most of these incidents which involve him being removed from the casino for reporting threatening and offensive action, no action being taken against Caucasian guests that harassed and antagonized him; being banned him for expressing dissatisfaction with the way his ATM issue was resolved; and no action was taken against the Caucasian man who made offensive racial comments to Hurston and his guest. However, Hurston does plead allegations of the June 13, 2019 incident when casino host Turner discriminated against him when he didn't book Hurston a room after he reported racial hate language and threatening behavior by

a Caucasian guest, and Hurston alleges that on June 14, 2019, his attempts to contract with the casino were interfered with by security and casino personnel, and that he was forcibly removed from the premises.  Thus, he claims, Hollywood Casino clearly "thwarted" his attempts to contract on these two occasions.  (Dkt. 25 at 11.)  He argues Hollywood Casino's intent in doing so was to discriminate on the basis of his race.

Hollywood Casino cites to *Onyango v. Nick & Howard, LLC* 607 Fed. Appx. 552, 544-555 (7th Cir. 2015) which held [t]o state a race discrimination claim under § 1981 *Onyango* needed to allege that the club refused to contract with him because of his race. See B*lack Agents & Brokers Agency, Inc. v. Near N. Ins. Brokerage, Inc.*, 409 F.3d 833, 837 (7th Cir. 2005); *Bagley v. Ameritech Corp.*, 220 F.3d 518, 521-22 (7th Cir. 2000). After a combative encounter with a club patron who made derogatory remarks to Onyango, defendant, Nick & Howard night club made Onyango leave.  Onyango filed suit against the club alleging race discrimination. The court held that the defendant night club, could not be liable for a patron's racially motivated conduct because to establish the defendants liability on a patron's animus, he needed to allege a basis for holding the club liable for the patron's conduct.  *Onyango* at 555.

Here, Hurston's allegations of failure to contract because of his race are due to acts committed by Hollywood Casino employees, and not casino guests.  Hollywood Casino concedes that Hurston was able to  contract with the casino on numerous occasions, and he was unable to contract only after five separate incidents within the casino.  They point out that the incidents where Hurston was removed from the casino were in response to altercations with fellow patrons and staff, which resulted in the one-year ban and the inability to contract with the casino on June 14, 2019. Hollywood Casino argues this evidence demonstrates Hurston's race was undisputedly not the reason for Hurston's ejection from the casino and his inability to contract.

16

While this evidence might be true, at this stage, the Court must only determine whether Hurston has sufficiently alleged a *prima facie* case.  In the second Amended Complaint, Hurston alleges that he is African-American.  The contract concerns Hollywood Casino's invitation to the public to enjoy its gambling, dining, and other retail services.  Hurston alleges on June 14, 2019, he attempted to contract, which was interfered with by security and casino personnel, he was forcibly removed from the premises and his attempt to contract was "thwarted". (Dkt. 25 at 11.) Throughout his Second Amended Complaint, Hurston alleges Hollywood Casino's intent in doing so was to discriminate on the basis of his race.  Hurston's allegations that he was banned because of his race, and that no actions were taken against similarly situated Caucasian guests allege sufficient facts to give Hollywood Casino fair notice of his § 1981 claim, while plausibly suggesting that she has a right to relief that rises above the speculative level.  *See Equal Employment Opportunity Commission v. Concentra Health Services, Inc*., 496 F.3d 773, at 776. Accordingly, the Motion to Dismiss is **denied** as to the discrimination claim under 42 U.S.C. § 1981.

## B.      False Imprisonment

False imprisonment is the unlawful restraint upon one's freedom of movement or the deprivation of liberty of another without consent.  *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 940 (7th Cir. 2003); *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 967 (Ind. Ct. App. 2001); *Ali v. Alliance Home Health Care, LLC*, 53 N.E.3d 420, 432 (Ind. Ct. App. 2016).  Liberty is considered freedom from arbitrary or undue external restraint.  It is not necessary that the individual be actually confined or assaulted; false imprisonment can be committed by words, acts, or both.  *Dietz*, 754 N.E.2d at 967.  However, the defendant must act "intending to confine the other or a third person within boundaries fixed by the actor."  Restatement (Second) of Torts § 35.

Where a defendant's actions are unintentional, a claim may not lie for "merely transitory or otherwise harmless confinement." *Id.*

Hurston alleges on June 8, 2019, he was falsely imprisoned by a Hollywood Casino employee's inaction when another patron was exhibiting threatening and offensive behavior toward Hurston, confining him against his will.  (Dkt. 17 at 17.)  He alleges the table games manager Tamara's inaction to the threatening and offensive behavior of the Caucasian man made it so there was no safe, reasonable means of escaping without Hurston being exposed to more offensive conduct, or physical harm. *Id.*  Thus, since Tamara was "alert to the danger," the failure to act "confined [him] to offensive and dangerous behavior and the only way to escape that danger was for [him] to expose himself to more offensive and dangerous behavior with no alternative path".  (Dkt. 25 at 15-16.)  Hollywood Casino argues persuasively that these facts do not meet the standard for false imprisonment because Hurston alleges "a Casino employee's *inaction* concerning an encounter between [Hurston] and another patron caused [Hurston] to be falsely imprisoned." (Dkt. 21 at 16) (emphasis in original).

The Court agrees. Hurston makes no allegation that a casino employee unlawfully restrained his freedom of movement or deprived him of his liberty. Hurston's false imprisonment count does not state a claim upon which relief can be granted, and is therefore **dismissed**.

## C.   <u>Intentional Infliction of Emotional Distress</u>

Intentional infliction of emotional distress requires extreme and outrageous conduct by one which intentionally or recklessly causes severe emotional distress to another. Restatement (Second) of Torts § 46 (1965).  The elements of the tort are that the defendant: "(1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Lindsey v. DeGroot,* 898 N.E. 2d 1251, 1264 (Ind. App. 2009).

"For conduct to be extreme and outrageous, it must go "beyond all bounds of decency" and be "considered intolerable in a civilized community." *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) (quoting *Lopez v. City of Chi.*, 464 F.3d 711, 721 (7th Cir. 2006). It is not enough that a defendant acted with tortious intent or even criminal intent, but the intent to harm a plaintiff emotionally which constitutes the basis for the tort of intentional infliction of emotional distress. *Neff v. Wal-Mart Stores, E. LP*, 113 N.E.3d 666, 672 (Ind. Ct. App. 2018).

Hurston alleges that from April 7, 2018 through June 21, 2019, Hollywood Casino personnel participated in continuous insulting behavior toward him, such as discrimination, harassment, negligence, false imprisonment, breach of contract, conspiracy and retaliation, giving rise to a claim of intentional infliction of emotional distress. He alleges, "there had been continuous acts of discriminatory treatment that purposefully got worse after he put management on alert that he felt discriminated against because of his race." (Dkt. 25 at 16.) Hurston attempts to equate his situation to that in *Holbrook v. Lobdell-Emery Mfg. Co.*, 219 F.3d 598 (7th Cir. Ind. 2000). This Court is not prepared to equate Hurston's situation with the plaintiff's situation in that case, where he had been set on fire after being released from a hospital where he was treated for severe depression and psychosis. However, presently, he is not required to meet that high burden.

Hollywood Casino relies on the summary judgment holding in *Carney:* "the act of ejecting [plaintiffs] from the casino because of their unruly and disruptive behavior does not constitute extreme and outrageous conduct under Indiana law." 2009 WL 363623 at *6. Hollywood Casino argues there is no evidence that any action taken by casino personnel was so outrageous and extreme as to go beyond all possible bounds of decency. That may be true, however, at this stage of the proceedings, Hurston need only plead sufficient facts to give Hollywood Casino fair notice of his claim, while plausibly suggesting that he has a right to relief that rises above the speculative

level.  Hurston's *pro se* Second Amended Complaint must be liberally construed.  With this in mind, the Court finds that Hurston as pled sufficient facts on this claim, and the Motion to Dismiss this count is **denied**.

## D.    **Breach of Contract**

To have a valid contract in Indiana, the alleged contract must include an offer, an acceptance, and consideration.  *Stardust Ventures, LLC v. Roberts*, 65 N.E.3d 1122, 1126 (Ind. Ct. App. 2016) (citing *Indiana Dep't of State Revenue v. Belterra Resort Indiana, LLC*, 935 N.E.2d 174, 179 (Ind. 2010)).  A "meeting of the minds" between the contracting parties is essential to the formation of a contract.  *Ind. Dep't of Corr. V. Swanson Servs. Corp.*, 820 N.E.2d 733, 737 (Ind. Ct. App. 2005); *Homer v. Burman*, 743 N.E.2d 1144, 1146-47 (Ind. Ct. App. 2001).  There must be mutual assent on all essential elements or terms in order to form a binding contract.  *Ind. Dep't of Corr.,* 820 N.E.2d at 737. To establish a breach of contract, a plaintiff must establish (1) the existence of a contract; (2) breach of said contract; and (3) damages.  *Fouler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993).

Hurston alleges on June 1, 2019, he and Casion entered into a contract for exclusive communication and handling of future issues.  Hurston asserts this contract was breached on June 14, 2019 when Casion did not speak with Hurston directly to resolve a conflict he had been involved in with another casino patron.  Hurston further says there was no further communication from Casion after multiple attempts by him to contact Casion after reporting the June 1, 2019 incident.  Hurston contends Casion offered to enter into this contract as a means to retain him as a customer and to prevent any additional action such as reporting casino employees' treatment of him to the media or filing lawsuits.  Hurston states it was made clear if he accepted, his casino experience would become more pleasurable and that, although he may be faced with offensive and

discriminatory behavior, Casion would attempt to address and fix the inappropriate occurrences. (Dkt. 25 at 19.)

Hollywood Casino maintains the conversation between Hurston and Casion on June 1, 2019 does not support the assumption or inference that a contract was entered into, and the legal requirements for a valid contract did not exist between the two parties, since there was no consideration or a meeting of the minds for a contract to have been made. Hollywood Casino asserts that the "Second Amended Complaint, at most, alleges a promise or agreement by [Casion] to talk to [Hurston] if he had any future issues at the Casino." (Dkt. 21 at 21.)

Accepting all facts in the Second Amended Complaint as true, Hurston has sufficiently alleged that there was a contract formed, and Casion breached their agreement on June 14, 2019. Thus, the Court finds Hurston's breach of contract claim survives dismissal.

**E.** **<u>Negligence</u>**

A plaintiff seeking to recover damages in a negligence action must establish three elements of actionable negligence: (1) a duty of care owed by the defendant to the plaintiff, (2) breach of that duty, and (3) an injury proximately caused by breach. *Buechel v. United States,* 746 F.3d 753, 763-43 (7th Cir. 2014). The touchstone to determine the existence of a duty is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Vesely v. Armslist LLC*, 762 F.3d 661, 665 (7th Cir. 2014).

Hurston asserts that he was a business invitee at the casino. He argues that under Indiana law, a landowner owes "the duty to exercise reasonable care for [an] invitee's protection while he or she is on the premises." *Harradon v. Schlamadinger*, 913 N.E.2d 297, 300-01 (Ind. Ct. App. 2009). He alleges as a business invitee, Hollywood Casino failed to act on claims of discrimination

and harassment, and thus failed its duty to provide a public accommodation free of discrimination. Specifically, Hurston alleges negligence when the casino manager failed to rectify an issue he had with an ATM at the casino, and other casino employees were negligent by failing to act after reports of offensive behavior by patrons and discriminatory behavior by personnel and failing to conduct a proper investigation prior to his banishment. Hurston further alleges negligence when VIP privileges that were offered to a Caucasian woman, and the Casino General Manager neglected to communicate about the ban to Plaintiff before he arrived at the casino. (Dkt. 17 at 19-20).

Hollywood Casino contends that Hurston has not supported his allegations that it breached its duty owed to Hurston. It asserts there is no law in existence that requires the casino to protect a business invitee from unpleasant encounters, only from dangerous conditions. Hurston was owed a duty by Hollywood Casino to make its premises safe from physical dangers and Hurston has not alleged any physical harm caused by any of the conditions at the casino. Hollywood Casino argues it maintained safe physical conditions of its casino premises, and thus it did not breach its duty to Hurston as a business invitee. The Court agrees. The Court knows of no case law or other authority that a business owes a duty to a business invitee to provide a public accommodation free of discrimination. Hurston has not stated a viable claim of negligence and his negligence claim is **dismissed**.

### IV.    <u>CONCLUSION</u>

For the reasons stated above, The Court hereby **GRANTS** Plaintiff Miracle Hurston's second Motion to Amend, (Dkt. 27), and **CONSOLIDATES** the Amended Complaint at Dkt. 27-1 docket with the Second Amended Complaint in docket 17 at 2. **The Court  DENIES** Hurston's

Motion for Leave to file a third amended complaint, (Dkt. 37)**.** Hurston's Motion for Reconsideration, (Dkt 46), is **DENIED as moot**.

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Defendant Penn National Gaming, Inc. d/b/a Hollywood Casino's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 20) is **GRANTED in part and DENIED in part**. Hollywood Casino's Motion to Dismiss Hurston's claims under Title II of the Civil Rights Act (42 U.S.C. § 2000a), as well as his claims of false imprisonment and negligence is **GRANTED**. Hurston's claim of 42 U.S.C. § 1981 discrimination, intentional infliction of emotional distress, and breach of contract have survived the initial hurdle of a motion to dismiss, and the Motion to Dismiss these claims is **DENIED**. Whether or not these claims can survive summary judgment is a matter for another day.

The Stay issued at Dkt. 45 is **LIFTED**. The parties shall contact the Magistrate Judge to reschedule the telephone status conference. Because of the stay, the Magistrate Judge will determine a new discovery and dispositive motions deadline.

**SO ORDERED.**

Date: 10/26/2020

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

23

DISTRIBUTION:

Miracle Hurston
1812 Grand Avenue
Middletown, Ohio  45044

Catherine A. Breitweiser-Hurst
JOHNSON & BELL, P.C.
breitweiserhurstc@jbltd.com

Edward W. Hearn
JOHNSON & BELL, Ltd. (Crown Point)
hearne@jbltd.com