UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MIRACLE HURSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04890-TWP-DLP |
| | ) | |
| INDIANA GAMING COMPANY LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### **ORDER**

This matter comes before the Court on the Plaintiff's Motion for Defendant to Pay the Excess Costs, Expenses, and Attorney's Fees Due to Defendant Unreasonably Multiplying Proceedings, Dkt. [251]. For the reasons that follow, Plaintiff's Motion is **GRANTED**.

**I.   Background**

This case centers on the Plaintiff's allegations of racial discrimination in violation of 42 U.S.C. § 1981, and state law claims of intentional infliction of emotional distress and breach of contract against the Defendant. (Dkts. 1, 49, 127, 128). Over the course of this nearly 3-year litigation, the Undersigned has held numerous discovery conferences with the parties regarding the Defendant's surveillance footage and incident reports, the resulting conduct of which is the focus of Plaintiff's motion. Specifically, on April 27, 2021, the Court held a discovery conference with the parties during which defense counsel, Attorney Catherine Breitweiser-Hurst, represented to the Court that it was not possible for her client to

search for incident reports using the search term "altercations" but that it was possible to search by individual names. (Dkt. 108). Based on this representation by counsel, the Court ordered the Defendant to produce all incident reports involving certain named individuals from January 1, 2018 to December 31, 2019. (Dkt. 108 at 4).

    Plaintiff subsequently presented evidence to the Court, through a subject matter expert on security hardware and management systems, that the iTrak system used by the Defendant can, in fact, be searched by search terms including "altercation," a fact which would suggest that Defendant and its counsel had presented misleading or false statements to the Court. (Dkt. 121). Thereafter, in its November 15, 2021 ruling on Plaintiff's Renewed and Supplemental Motion for Default Judgment Sanctions (Dkt. 120), the Court ordered Attorney Breitweiser-Hurst to show cause why she should not be sanctioned for asserting that incident reports cannot be searched by the category of "altercation." (Dkt. 197 at 5-8). The Court further directed that her written response address (1) a description of the reasonable inquiry into the factual basis for asserting that incident reports cannot be searched by altercation, and (2) confirmation as to whether incident reports can be searched by altercation and, if so, the basis for her prior statement that they could not be searched by altercation.[1] (Id.).

---

[1] The Court also directed Respondent to "Confirm[] compliance with the Court's April 27, 2021 Order to produce all incident reports involving certain named individuals, explaining the representation that Defendant did not have any incident reports involving Casino Manager Jerry." (Dkt. 197 at 8).

On December 10, 2021, Attorney Breitweiser-Hurst, represented by Attorney Edward Hearn, filed her response to the order to show cause and contemporaneously moved for a hearing, which was granted. (Dkts. 205, 209). The Undersigned proceeded to conduct four hearings on the order to show cause, on January 12, 2022; January 13, 2022; January 27, 2022; and March 10, 2022. (Dkts. 216, 217, 228, 231).

While the motion to show cause for Attorney Breitweiser-Hurst was pending, Mr. Hurston filed a motion requesting default judgment due to Defendant and its counsel's perjury and failure to comply with the Court's previous orders. (Dkt. 218).

On March 22, 2022, the Court stated as follows: "From the affidavits of Attorney Hurst and Mr. Bova, a large contention as to why incident reports cannot be searched by "altercation" is because the search will not "yield accurate results" due to casino dispatchers selecting the wrong incident type. (Dkt. 205-1 at ¶¶ 14-16; Dkt. 205-2 at ¶¶ 5-6, 9). As would later come out multiple times throughout the 4-day hearing, this contention is inaccurate. As described below, incident reports can be searched by the word "altercation" in the report's "Incident Type" field. That field is completed either by the responding officer, who has personal knowledge of the incident, or the dispatcher." (Dkt. 234 at 10). Perhaps more importantly, the Court also noted that:

> Respondent, in her response [to the Court's show cause order], and her counsel during the hearings continuously mischaracterized the Court's Order, conflating the Court's directive into an inquiry that was never asked. (Dkt. 197). The Court's directive to Attorney Hurst was simple: in light of Plaintiff's assertion that you misrepresented Defendant's ability to search iTrak incident reports by "altercation," (1) "descri[be]

3

> the reasonable inquiry into the factual basis" for this assertion," and (2) "confirm[] whether incident reports can be searched by altercation and, if so, the basis for [your] prior statement that they could not." (Dkt. 197 at 8). Respondent and her counsel, though, morphed the Court's questions into a question about the credibility or reliability of the search, which was never asked.
>
> Throughout the four-day hearing, the Court spent an extensive amount of time having to continuously explain the purpose of the show cause and the questions the Court wanted answered.

(Dkt. 234 at 10-11). Finally, when presented with the discrepancies between the testimony presented by Ms. Breitweiser-Hurt and Mr. Bova at the show cause hearing and in their affidavits:

> counsel was not prepared to address this issue. Nor did Respondent's counsel appear to appreciate the significance of this discrepancy given the fact that Respondent's counsel relied on Mr. Bova's affidavit in representing to the Court why the show cause order should be discharged, and the basis Attorney Hurst and Mr. Bova asserted in their affidavits for why the incident reports could not be searched by altercation was because of inaccuracies by the dispatcher – who has no personal knowledge of the incident – in completing the "Incident Type" field. (Dkt. 222 at 2:15-10:6, 11:15-13:13, 18:24-20:18, 25:25-26:1, 26:12-29:24, 34:5-11). Respondent's counsel did ultimately agree that there is a contradiction between Mr. Bova's affidavit and his hearing testimony. (Dkt. 222 at 27:16-25).

(Dkt. 234 at 16). Nevertheless, the Court discharged the order to show cause for Attorney Breitweiser-Hurst, finding that she did not knowingly make false statements to the Court in violation of Indiana Rule of Professional Conduct 3.3 and that she had reasonably relied on statements made by her client. (Dkt. 234 at 17-18).

On March 31, 2022, Plaintiff withdrew his Motion for Default Judgment for Perjury and Failure to Comply (Dkt. 218) and Defendant withdrew its Motion for

4

Summary Judgment (Dkt. 145) so that the parties could instead participate in a settlement conference with the Undersigned on May 10, 2022. (Dkt. 241). The entry, however, permitted the parties to refile their motions after the settlement conference, if appropriate. (Id.). The case did not settle at the May 10, 2022 settlement conference (Dkt. 247) and, thus, Plaintiff refiled his Motion for Default Judgment for Perjury and Failure to Comply with Court Orders as the present Motion for Defendant to Pay Excess Costs, Expenses, and Attorney's Fees Due to Defendant Unreasonably Multiplying Proceedings. (Dkt. 251). Defendant filed a response on June 14, 2022 and Plaintiff did not file a reply. (Dkt. 267).

**II. Legal Standard**

Federal Rule of Civil Procedure 37, as well as the Court's inherent power to manage discovery, provides the Court with broad authority to sanction a party who abuses the discovery process. *Malibu Media, LLC v. Tashiro*, No. 1:13-cv-00205-WTL-MJD, 2015 WL 2371597, at *10 (S.D. Ind. May 18, 2015). Sanctions serve two purposes: to penalize parties who do not follow the rules and to deter others tempted by the notion that abusive conduct has no serious consequences. *Greviskes v. Univ. Rsch. Ass'n, Inc.,* 417 F.3d 752, 758-59 (7th Cir. 2005); *see also* Fed. R. Civ. P. 37(b)(2)(A)(vi); *Malibu Media*, 2015 WL 2371597, at *21. A discovery sanction must be proportional to the offense, *Allen v. Chicago Transit Auth.,* 317 F.3d 696, 703 (7th Cir. 2003), and is determined by assessing "the egregiousness of the conduct in question in relation to all aspects of the judicial process." *Dotson v. Bravo,* 321 F.3d 663, 667 (7th Cir. 2003).

### III. Discussion

In the present motion, Mr. Hurston contends that discovery sanctions are appropriate because the Defendant and its client made misrepresentations to the Court that, in turn, unreasonably multiplied the proceedings and caused Plaintiff to incur additional time and money to attend. (Dkt. 251 at 3-4). Specifically, because of the Defendant's conduct and misrepresentations, this Court was forced to continue the January 12, 2022 show cause hearing three times, transforming a simple hearing into a four-day affair. (Id.). Defendant maintains in response that the Plaintiff filed the motion that necessitated the show cause hearing and, also, that one of the hearing days needed to be continued because Plaintiff had requested to review the hearing transcript. (Dkt. 267 at 3-4). Furthermore, Defendant maintains that Ms. Breitweiser-Hurst never made false statements to the Court. (Id. at 4-5).

Contrary to the Defendant's argument that Ms. Breitweiser-Hurst never made false statements to the Court, the Undersigned has already concluded that Ms. Breitweiser-Hurst's statements made during the April 27, 2021 discovery conference and in her December 10, 2021 affidavit were false. (Dkt. 234 at 16-17). What the Court went on to conclude, however, was that Ms. Breitweiser-Hurst was relying on the representations made by her client, Mr. Bova, when making her statements. (Id. at 16-18). Moreover, although Defendant claims that Mr. Bova did not give false testimony and did not intend to mislead the Court, the fact remains that Mr. Bova's affidavit regarding why incident reports cannot be searched by "altercation" resulted in multiple delays and hearings that were ultimately

6

unnecessary. For example, although Mr. Bova's affidavit stated that incident reports cannot be searched by "altercation" because the search will not "yield accurate results" due to casino dispatchers selecting the wrong incident type, (Dkt. 205-2 at ¶¶ 5-6, 9), during Mr. Bova's examination, however, he testified, in direct contradiction to his affidavit, that the responding officer is the person who completes the "Incident Type" field. (Dkt. 221 at 36:3-8; 87:25-88:7; 89:1-8). Moreover, defense counsel, Edward Hearn, ultimately agreed that there was a contradiction between Mr. Bova's affidavit and his hearing testimony. (Dkt. 222 at 27:16-25). Mr. Bova thus provided misstatements to the Court. While the Defendant asserts that "[t]here is no evidence that Mr. Bova ever stated to the Court in any manner that *only* dispatchers or *only* managers/security officers fill in the 'Incident Type' label in incident reports," (Dkt. 237-1 at 9), Mr. Bova's affidavit at least demonstrates a willfulness to mislead the Court.

Perhaps more importantly, Ms. Breitweiser-Hurst and her counsel, Mr. Hearn, seemed to fundamentally misunderstand the Court's instructions and orders given at multiple conferences and in written entries, as outlined previously. For example, in its Show Cause Order the Court directed Ms. Breitweiser-Hurst to, "in light of Plaintiff's assertion that you misrepresented Defendant's ability to search iTrak incident reports by 'altercation,' (1) 'descri[be] the reasonable inquiry into the factual basis' for this assertion,' and (2) 'confirm[] whether incident reports can be searched by altercation and, if so, the basis for [your] prior statement that they could not.'" (Dkt. 197 at 8; Dkt. 234 at 11). Nevertheless, Ms. Breitweiser-Hurst and

7

her counsel transformed that simple directive into a question about the reliability or credibility of any search into the incident reports and the Undersigned was required to spend a good part of the show cause hearing redirecting Defendant's counsel to the question that was actually asked. Contrary to the Defendant's assertion, the bulk of the delay in conducting the show cause hearing over four separate days was largely due to the conduct of Mr. Bova, Ms. Breitweiser-Hurst, and Mr. Hearn.

Without the misrepresentations submitted to the Court by Mr. Bova and Ms. Breitweiser-Hurst, discovery into the incident reports could have occurred almost a year sooner, and the Court would not have been required to hold a show cause hearing at all. Instead, however, Defendant still argues that "the proceedings Plaintiff complains of in this Motion were precipitated by Plaintiff's unsuccessful motion [the motion for default]." While Plaintiff's motion for default was unsuccessful in outcome, the result of that motion was a finding by the Court that Defendant's counsel had submitted false statements to the Court – moreover, it was only through the dogged pursuit of discovery by the Plaintiff that these misrepresentations were uncovered. *See Littler v. Martinez,* No. 2:16-cv-00472-JMS-DLP, 2020 WL 42776, at *38 (S.D. Ind. Jan. 3, 2020) ("In another case against a less capable or tenacious pro se litigant, [Defendants'] failure to turn over the video evidence could have resulted in summary judgment in their favor based on false evidence. It is paramount that the Court deter such misconduct."). As such, based on the nature of the misrepresentations made to the Court and the unnecessary enlargements of the show cause hearing based on counsel's misunderstandings, the

8

Court concludes that a sanction is warranted. Accordingly, the Court finds it appropriate for the Defendant and its counsel to pay to the Plaintiff the amount of $2,500.00.

### IV.  Conclusion

For the reasons stated above, Plaintiff's Motion for Defendant to Pay the Excess Costs, Expenses, and Attorney's Fees Due to Defendant Unreasonably Multiplying Proceedings, Dkt. [251], is **GRANTED**. Defendant and its counsel shall pay to the Plaintiff the amount of $2,500.00 within seven days of this Order.

So ORDERED.

Date: 12/9/2022

*Doris L. Pryor*
Hon. Doris L. Pryor
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

MIRACLE HURSTON
1812 Grand Avenue
Middletown, OH 45044